We'll now call the first of our four cases for today, number 13-4767, United States v. Donahue, Mr. Hinckley, and Mr. Bartolai?  Bartolai. Bartolai, okay. Thank you, Your Honor. May it please the Court, Todd Hinckley on behalf of the United States, Your Honor. We wish to reserve time for rebuttal. We would reserve three minutes for your question. That's fine. Thank you. Your Honors, it's the government's position that the lower court erred when it suppressed evidence seized from Mr. Donahue based on two faulty assumptions. First, that the crime under investigation, that being failure to surrender for service of sentence, was not a continuing crime. And second, that the items seen in plain view by Deputy Archuleta in Mr. Donahue's vehicle at the time of his arrest were not contraband. What was the district court's reasoning for finding that there should be suppression here? I'm sorry, Your Honor. What was the district court's reasoning? His reasoning was... Which is why it was not probable cause. His reasoning was, first, that the crime under investigation, failure to surrender for service of sentence, was already complete 15 days prior in Pennsylvania when he left the state. And second, that the evidence seen by Deputy Archuleta in plain view in Mr. Donahue's vehicle was contraband. Parenthetically, you seem to have conceded the standing issue. In other words, you have not raised on appeal any question as to Donahue's right to move to suppress. And the district court found he had standing. So, can I assume that you're not contesting that before? Well, this court has raised that issue by asking the parties to file supplemental briefs in regards to whether Mr. Donahue even had standing as a fugitive from justice. I don't think that's what we asked. I think we asked if he had a right to privacy, which doesn't mean he can't challenge it and then argue that he did. I mean, that's a little different. I agree with the court. I mean, it's getting to the merits. I agree with the court. The question is whether or not he had a reasonable expectation of privacy that society is prepared to recognize. But you really haven't raised that on appeal. You've responded to our letter and essentially said, well, you didn't raise it. That's correct, Your Honor. The court may be aware that we did raise standing before the lower court. On a different ground. On the ground that the automobile, you believe, was stolen and Donahue was using false ID. Yes. Not on the fugitive ground or any other ground. We argued that Mr. Donahue, as a fugitive from justice, had obtained false identification or an alias of Don Roberts by fraud. And that because he had done so and tried to possess the vehicle with that fraudulent name, as well as a hotel room that he did not have standing. But the district court rejected that and found that he had permission to use the vehicle. That's correct, Your Honor. When he was arrested, was that after the surrender date that had been set for him to surrender on his sentence? He was ordered to surrender. On January 4th. January, 15 days prior to his arrest. So he was now past the date that he was supposed to surrender. He was arrested 15 days after he was supposed to report to prison. You know what I couldn't understand in this case? When I picked up the briefs, I said to myself, not just to myself, my law clerks, I can't see where he had a right to privacy because I knew that a prisoner didn't have a right to privacy. And don't you have to look at the right of privacy because the question of the legitimacy of a search and a seizure always has to weigh the government's interest in making the search and seizure against the person who they're searching and seizure, if I can call it that, against the right not to suffer that. And that inherently there's no way that you can't consider the right to privacy. Now usually there's an obvious right to privacy that has to be taken into account and then you have to weigh the, you know, the search against it on the standards. But I couldn't, I wondered why that wasn't explicitly raised because it struck me that he couldn't possibly have a right to privacy since he was supposed to be locked up at that time in prison. And did he get more rights when he fled? I wondered why you weren't banging that with a sledgehammer. So to speak. So to speak. The government does agree, it raises a conundrum, how can a person who escapes or fails to surrender to prison gain himself greater rights under Fourth Amendment than he would if he obeyed the law. But all you say to us in response to our letter that without any case citation or any discussion was that he was a fugitive who was considered to be in the custody of the Bureau of Prisons. He's never been in custody. The lower court in its memorandum accompanying the order found that the defendant was an admitted fugitive from justice. Was an admitted fugitive. I don't see him to have admitted that he was a fugitive. That's the fact that the lower court found, Your Honor. But usually, but as a matter of law, normally a fugitive is one who escapes from custody. Was this person in custody? He was ordered to surrender himself to custody by the lower court. But he wasn't in custody if that is a requirement. He was not in custody if that is a requirement. He was not an escapee from custody. He failed to surrender for service a sentence as indicated in the judge's order. I read this in United States v. Salmon. The district court said the requirement in dealing with inventory searches be conducted according to such criteria or routine strikes of balance between the government's legitimate interest in such searches and the owner's legitimate expectation of privacy in the contents of the seized vehicle. And I wonder, didn't that also apply to searches on other bases as well? And that he had no, that you necessarily had to decide whether he had a legitimate expectation of privacy because you couldn't balance the two. I mean, this guy's not short of nerve. Are you familiar with a case, a recent decision of ours from February, United States v. Cortez Dutrievel, 743 F 3881, in which we found that the defendant had no legitimate expectation of privacy in the home in which he was staying because there was a protective order that prevented him from going into the home. So there's a violation of throwing you right over the plate. I understand. I'm going to try to hit this out of the ballpark. I'm not sure I'll be able to. It's government's position that really Mr. Donahue was a trespasser on society because he really belonged in a prison cell where he was ordered to be by the lower court. In fact, he had no right to be either in a vehicle or hotel. He was in violation of a court order to surrender. Right? As well as a violation of the law. Yes. The problem I have is just a logical one. The government seemed to justify its search of the car on the ground that it needed additional evidence to establish that Mr. Donahue was in fact a fugitive. That's the probable cause issue. If that's the case, then how could he be a fugitive when they're still looking for evidence that he might be a fugitive? I have a timing problem. Well, it's like any crime. It's under investigation. All we need to do to overcome the vehicle search exception to the Fourth Amendment warrant is to show probable cause. This is conflating a bit. There's the probable cause issue. Did they have probable cause to look for that additional evidence that he was in fact a fugitive? And then there's the issue of whether this person who did not surrender on January 4 had a reasonable expectation of privacy with regard to the Mustang he was in. And since fugitives, that is technically those who escape from prison, don't have reasonable expectations of privacy, do we extend that to someone who did not surrender? You've said to us that you had probable cause because you were looking for additional information that he was in fact a fugitive. We were looking for evidence. Or that you considered him to be a fugitive. For instance, what his state of mind was at the time of his arrest, whether he had intended to surrender himself, things that may come up as a defense at trial. Maybe would, could. What was your evidence of probable cause that he committed, that he did fail to surrender, that you could search, you could search the car? The following things are found in the record as articulated and as indicated by Deputy Archuleta. Appendix 114 through 123 or so. First, that the defendant had failed to surrender for service of sentence. That there was a warrant issued for his arrest. That Mr. Donahue was on the run for 15 days. That Mr. Donahue was utilizing a Ford Mustang in his status as a fugitive. And in fact was arrested in that Ford Mustang. That Mr. Donahue was using the alias Don Roberts. That Mr. Donahue had a large amount of cash, $2,500 in his pockets when he was arrested. That there were items in plain view inside the Ford Mustang to include maps, newspapers, clothings, bags. You had a mess there. And those various other things. Deputy Archuleta also testified that his training and experience as a U.S. Marshal. That fugitives from justice will likely possess large amounts of cash, false or fake identification, changes of clothing, and things of that nature need to remain as a fugitive. And that they would keep those things close to themselves so they can gather them up and leave quickly. All I've heard so far in terms of the probable cause to believe that evidence of a crime or whatever you would call it. A failure to surrender would be found in the car was the mess you found. Some newspapers, some food, some maps. And Archuleta says that it's likely there will be other things. I don't know if that's probable. But if you're citing the record, at 155 Archuleta testifies that he did not seize the vehicle and the contents because he believed he had probable cause. Had I not been requested by Pennsylvania to seize the vehicle, no, I would not have. So he didn't think there was probable cause. He was told by Scranton to seize it. I see that my time is up. May I answer a question, Your Honor? Go ahead. Your Honor, the government would note that there are other parts of the record where he did say he indicated he thought that there would be things relevant to the crime in question. But it matters not what Deputy Archuleta thought. It's what a reasonable person would have thought. Given all those factors I've recited to the court, that there is probable cause to search that vehicle. Thank you. Thank you. Thank you. May it please the Court? Gina Bartle, I am on behalf of the appellee. Mr. Donohue? Mr. Bartle, before you get into the merits of the case, perhaps you know the answer. Why is your client still in Pike County Jail nine months after he was brought there for purposes of the hearing that occurred seven months ago? And I understand he's still there awaiting our decision in this case. And he is a cancer patient who should be receiving therapy or whatever his protocol would be. And he's not been receiving it in the Pike County Jail. Well, Your Honor, my client is an inmate in the custody of the Bureau of Prisons serving a sentence. And he's been brought to the Pike County Jail in the marshal's custody pending the suppression hearing and apparently the trial. He's raised these issues with the court and apparently the marshals have determined to keep him there. Well, he raised it to us in a letter in April, I believe it was. And the clerk responded that you have an attorney, essentially. You can't make a submission to us since you are represented by counsel. I just raised this issue because it should be looked into if what he says in his letter is true. And it's a docket entry, Your Honor, so I'm not considering anything outside our record. It doesn't seem to me that he should remain in Pike County too much longer. Well, he would love to hear that because he's dissatisfied with being at Pike County Jail. He says he's humiliated by having to... I'm not talking humiliation. I'm talking about necessary treatment for his cancer. Well, in all fairness to the marshal's service, they have offered him medical care of sorts now. And he's refused that. See, that's all. I'm not going there. But I appreciate your concern. If the court can move him, he certainly would be appreciative of that. We don't do anything if there's no application. All right. Very good. Is there really a distinction between a completed and a continuing offense for purposes of our analysis here for probable cause? Well, no. In our analysis, there's not. What we have here in this case is when the court was looking at the evidence that was adduced at the suppression hearing, it looked at the violation of the court order specifically, and it also looked further than that. It said that by violating this court order, you're also committing an offense under 3146. And it looked at the elements of that as well. Now, in its opinion, it mentions that in view of the elements, the offense was completed when he failed to appear, which is true. But it's not to be construed as the court saying that it's not a continuing offense. Because we know from the Supreme Court decision in, I can't recall, the Bailey, that escape is a continuing offense. And it seems by analogy that this would be a continuing offense as well. And other circuits have found that. Not this particular circuit. But I think that's a confusing issue that really isn't the point. And Mr. Hinckley has brought that up, saying that the court erred in finding that it was a continuing offense. But the court didn't find that. The court reasoned that the offense was committed when he failed to appear. But at no point in time did he say that it was not a continuing offense. Instead, it based its determination on the fact that the government just merely failed to produce evidence that would show that there was probable cause. And as Judge Barry's pointed out, in this particular case, this Deputy Marshal Archuleta was very candid. He said, hey, I wasn't going to take it. In fact, I wasn't going to seize this car or the contents. I had no clue that they had any evidentiary value. The local police were arranging to have the car impounded, and that would have been the end of it. But Archuleta also said that in his experience tracking fugitives, it's not unusual for fugitives or persons who haven't surrendered to have possessions of items that would help them evade law detection. And they may include fake or false IDs, false identification documents, large amounts of cash, and large amounts of clothing. And he noted that these folks usually keep those items very close to them. So, why isn't that probable cause to search for that kind of evidence in the car? Well, Your Honor, it's approximately a year, perhaps a year and a half later, that he made those distinctions. That clearly wasn't on his mind at the time. He wasn't thinking that when he was doing this. His first encounter with Donahue was when the New Mexico State University police had boxed him in, and they were arresting him. And he didn't see Donahue put anything in the car or take anything out of the car. And from his observation of the vehicle, there was sunflower seeds and a map and a newspaper and a coat jacket thrown over the seat. There were photos taken of the interior of the car as it appeared at the time of his arrest. Now, they haven't been included in the appendix, but the district court had the occasion to look at those photos. It was described as a mess. It was a mess. Well, you know, it was messy, I think, is what the record says. But again, the district court had the occasion to look at those photos and to listen to the evidence and basically found that that did not develop into probable cause. Now, the government took a position in its earlier argument that Donahue being a fugitive, and that's a key word that they were interested in portraying Donahue as a fugitive, that anything that he had would have been contraband. And so it was the government that asserted that position, which was rejected by the court. If there was probable cause, would they have needed a warrant? No, under the automobile exception, if that were applicable, it was a car that was where he was found, and albeit it was not moving on the highway. So they could continuously search it. If there's probable cause, they can search it and search it again. Well, you know, there's a few cases where a few days later, you know, there's a case, John, where marijuana, which was clearly contraband, was taken out of the vehicle and then opened up three days later. So the connection between the vehicle and the contraband were separated, and it was three days later, and that was held by the court to be, you know, permissible under the automobile exception. So probable cause is what's required in this particular case in light of the automobile exception. The automobile exception applies both to contraband and to evidence of a crime. It does, yeah, and the court found that. I mean, it's right in the court's opinion, you know. It was just, the court basically rejected, you know, the notion that anything in the car would be considered contraband. Sunflower seeds, a map, a newspaper, and so on. Contraband typically being things that are unlawful. Well, and I think the government's position has been, contraband, they've used the word contraband before the district court. I don't think it was contraband they wrote. I don't think the government was suggesting there was probable cause of any crime other than the one that brings us here, the failure to surrender. I don't think they're suggesting, well, you know, he was really, maybe he was a drug dealer or maybe he was a murderer. I mean, they were looking for probable cause of this event, probable cause to search the car, you know, probable cause that he failed to surrender. You know, these probable cause cases, they read perfect when you read them, when you hear them at the evidence, you know, they're beautiful. This isn't. This is a case where there was no probable cause. This is a case where the officer was candid. You know, I arrested the guy, I had a warrant, he didn't show up to surrender, and now I'm getting phone calls. And now, after he does this, he goes right in the guy's hotel room. No search warrant, nothing. And he's rummaging through this stuff. He doesn't see the consequences of this. He figures this is, you know, the case is basically over. And he gets this phone call from Strand to take everything, you know, and sure enough, that's what he's doing. Of course, because they followed him into the car. Now, once you're in the car, we got you. That's got you, because you don't need a warrant. Now it's got you. So they could have, I suppose, they could have stopped him before he got in. Well, no, even then, the automobile, there was a car. I can't believe how, Judge Greenberg, over our years, the automobile exception now amounts to, if there's a car, you know, you don't need a warrant. Well, that's it. And, you know, there were so many chances to get a warrant in this case. The 20th is when he was arrested. And the car was searched and released to an impound yard. They went and got it from the impound yard for no reason. They just got it. They had it x-rayed. No search warrant, nothing. They find a clip there, a clip on the, behind the seat of court, apparently. And, you know, now this is, these bags in the car, there must be a gun there. Did that happen when the agent Willicke was moving the car? That did, yeah, that's right, that's right. So, you know, they know, I mean. It could have been, this is a hypothetical, it could have been planted there while it was in the lot. Well, we have a trial. There'll be a trial, apparently, at some point in this case. So who knows what will be. But clearly, I mean, that's a chance. That's where, you know, the marshal's service policy directives say, you get a search warrant, you know. We don't inventory, you know, it's not to use inventory as a guise for, you know, investigatory searches. So clearly, they should have had a search warrant there. Now, not only are there marshals involved, there's a U.S. attorney in Scranton who's also here, you know, you know, suggesting the way that this should proceed. So. Wouldn't any, well, wouldn't, wouldn't. The government does not raise on appeal the inventory search. It's only probable cause, the probable cause issue. The inventory search, in some respects, would have been stronger to me as an issue. Well, there were strong issues. We had tried to point out the, you know, there were problems with the inventory search. Again, they didn't raise it. And, you know, so, I mean, we didn't brief it, but we have briefed it in the past. And, you know, there were, the policies were set forth in the record, and the court found, you know, clearly that they, it was an investigatory search and not an inventory search, so. Well, so I pointed out that the court, in an inventory search case in Somet, we said, well, you have to weigh the expectation of reasonable right of privacy of the defendant with the government's need to make the search and so forth. Wouldn't that always be true? You have to. I don't know. You know, I'm unfamiliar with Somet, the case. But, I mean, as far as my understanding of inventory search, if it were for the caretaking function, you know, to, you know, the inventory, when a person is arrested, the car will be impounded and inventoried pursuant to the caretaking function of getting the property back to its rightful owner. That wasn't the case here. The record's clear on that. But suppose, forget inventory, suppose the government has information that somebody in his house has illegal drugs, and they have good information, and they file for a search warrant, and they get it. And then they go in, sure enough, they pick up the illegal drugs, and there's a motion to dismiss. Isn't there a motion to quash or suppress? Isn't there clearly inherent in the motion the right that the defendant is advancing that he has a reasonable right of privacy in his house and so forth? I mean, isn't that just inherent in the motion that he's advancing that he has a right of privacy? What is it that he's protecting? Well, I believe that it is, because, I mean, in all these cases... Right, okay, fine. I mentioned that, because I can't see how, and I read the Joseph case, I can't see how the right of privacy can't be considered, because otherwise, what is it that the defendant is protecting? And if he doesn't have a right to privacy, he has nothing to protect. I think that this is the fugitive standing issue that the court is... No, it's different than standing. It's a substantive issue. What is it, what right is it that he's trying to secure? Well, I just, it struck me that it's just, that's got to be the right of privacy. He can't make, he can't raise that issue unless he has standing to do so. He can't file the motion to quash or the suppression motion unless he can show a reasonable expectation of privacy. So, I call it all the standing issue, maybe we're talking this, but I think that's almost the preliminary finding as opposed to one tied up in the merits. Yeah, and that's what I thought too, and I just couldn't see how it could not be part of the case, and I picked up the case. I was startled when I read the briefs. And I said, gee, why didn't the government, as I demonstrated, pound this? Well, they didn't. Well, you know, obviously, a defendant has to have standing or the expectation of privacy in order to challenge. And, you know, this, the issue, that when the court set this out, this fugitive standing issue, it was something to really, it got my attention. And, you know, and they're talking about the cases, these other cases that are cited, they rely upon Hudson v. Palmer, which is the escape case. If he, if he had to have some right of privacy, why should he have more rights of privacy than he would have had had he surrendered as he was ordered to do? What does he do? By violating the court order, he enhances his position? Well, no, he doesn't. He had that. He didn't enhance it. Everyone has it. Individuals have that. No, no. It's not merely fugitives. Not once you're incarcerated, you have very little. No, no. Well, that's a different thing, Judge. And what we're saying is, and, you know, that first day of incarceration is eye-opening, you know, and he was never incarcerated. He was never in custody. The idea of constructive custody is like being a little pregnant. It didn't happen, you know, and it couldn't have happened in this case or in any case until those doors shut. And that's what the courts, I think, recognize Hudson v. Palmer when they say that the individual's concept of privacy is inconsistent with the interest of the institution in security. And not just that. A prison cell isn't like a home or an automobile or an office. And that's just inherent in the circumstances of the incarceration. So I submit, the government has waived the fugitive standing issue. The cases are distinguishable on the fact that those individuals were escapees, Mr. Donahue's never been in custody, and I also submit that, you know, that fugitives, the concept of fugitives was not foreign to the founders. Article 4, Section 2 of the Constitution specifically mentions fugitives in extradition and rendition. But the founders chose to use individual when they made the Fourth Amendment. So, you know, they could have used fugitives or qualified the individual's right to privacy in some way, but they didn't. And so John Hancock, fugitive, you know, all those fellows that were our founding fathers at one point in time, prior to the, you know, during the revolution were in essence fugitives. And yet they came up with this Bill of Rights and they used the term individuals. And it was a noble distinction. Hancock was a smuggler, wasn't he? Perhaps, perhaps, but I'm saying, I think that the court should reject the notion that a fugitive doesn't have standing. But a lot of people think of the fugitive, you know, similar to what that 1960s show was with Richard Kimball. I don't recall precisely, but I thought he was on his way to prison when he escaped and the whole show was called The Fugitive. And people think of it that way. Well, that doesn't make it. I understand it makes the name of the show The Fugitive. There's a broad spectrum. There's a broad spectrum of the fugitive. You don't remember the 60s? I wasn't born yet. Okay. Well, I do. I know. I see I'm out of time. All right. He's not going to raise the standing issue. He won it. Thank you. Thank you very much. Mr. Hinckley. Thank you, Your Honor. Two preliminary questions. Isn't it, you did not bring up the question as to whether you extend fugitive in prison to a person who doesn't surrender in the district court, did you? No, we did not. Okay. So wouldn't that be way... But whether or not fugitive failed to... Yeah. Isn't really your argument then come back to whether you have probable cause to search for additional evidence? Well, I believe both. I believe that there was reasonable cause. I can argue and talk about that if I've already covered that and also we did in the court below build a record which contained facts that this court could look at to determine that a defendant being a fugitive from justice could not create... You said you didn't raise it in the district court that whether you extend fugitive from custody whether custody extends to somebody who fails to surrender. That's correct but we didn't... On the other hand we didn't take an adverse position and the record below has the facts necessary for this court to review to determine that the defendant as a fugitive should not have additional rights. And how about Judge Barry's question as to whether maybe a good argument might have existed with regard to the inventory search? Did you bring that up? I... What was the... Did you bring up the fact that you could do the search here to look for the gun as a result of an inventory search? Yes, we did we did bring the inventory search question to the table at the lower court. You haven't raised that on appeal either. No, Your Honor. As the court is aware whenever the government takes an appeal what we as a local prosecutor's office do is we prepare a memorandum to include the facts case law and our recommendations as to what issues we believe are appropriate to bring forward. We then give that to the main justice in the SG's office. They make their own independent review and they decide which issues we bring up. I'm familiar with that process. Well, I'm glad I don't work there. We'd be glad to have you. I'd be in your office. We'd be glad to have you. I wouldn't have lasted. If there are no further questions I will rest. Thank you. Both counsel will take the matter under advisement.